Dear Mr. Averill:
On behalf of the Louisiana Judicial System (System) and Plaquemines Parish (Parish), you have requested the opinion of this office on whether the Parish may invoke the "emergency" provisions of the Public Bid Law (R.S. 38:2211-2293) to construct and/or purchase temporary courthouse facilities. The Louisiana Judicial System is a subgrantee seeking reimbursement for certain disaster-related local court construction and procurement projects and purchases in which reimbursement is being sought from the Federal Emergency Management Agency (FEMA). The Parish and judges of the Twenty-Fifth Judicial District Court are participants in the FEMA reimbursement application process.
According to your request, the original courthouse for the Twenty-Fifth Judicial District was destroyed by fire in 2001, with the court thereafter relocating to the Diamond Community Center. Hurricane Katrina essentially destroyed the Diamond Community Center with the court relocating again, but this time to a small, multi-use facility in Belle Chase, La. As Plaquemines Parish and, specifically, the parish judicial system, begins to recover from the devastating effects of Hurricane Katrina, a health and safety crisis has developed at the temporary courthouse facilities. As the court system increases its case load it has become apparent that the current facilities do not have adequate security protections. The current facilities do not allow any realistic method of separating victims, witnesses and defendants, and offers little or no security for the judges. By way of example, you state that on one recent occasion, one of the two judges conducted divorce proceedings in the kitchen.
Your request further states that after Hurricane Katrina devastated the temporary court facilities at the Diamond Community Center, FEMA indicated that a new temporary court facility would be built by the Army Corps of Engineers with FEMA assuming full financial responsibility. However, due to policy changes, FEMA has now advised the court that the Army Corps of Engineers will not be able to construct the new temporary courthouse, and that the District will have to take responsibility for the courthouse construction. Had this policy change occurred prior to the current rate of recovery the *Page 2 
parish is experiencing then a formal bid of new temporary courthouse facilities may have been possible without the health and safety concerns that now exist.
The opinion request states that the present makeshift court facilities pose a threat to the safety and security of the citizens of Plaquemines Parish, and to the judges and staff of the Twenty-Fifth Judicial District Court, which you believe necessitate invocation of the emergency provisions of the Public Bid Law. Attached to your request is a letter from Judge William A. Roe, Chief Judge of the Twenty-Fifth Judicial District Court, which details the safety and security concerns as follows:
 (1) The makeshift court facilities house two judges, two small courtrooms, the district attorney, the clerk of court, numerous sheriffs' offices, the indigent defender's board, and the assessor's office. The judges and staff are in dire need of adequate courthouse space.
 (2) The post-hurricane Katrina recovery of Plaquemines Parish has reached a critical stage such that the functions of the various entities operating in the makeshift court facilities are colliding and over-lapping each other.
 (3) There are no holding cells or other rooms available to segregate prisoners and the Sheriff does not have facilities to house prisoners pending a court appearance. As a result, as many as twenty prisoners are seated within a few feet of victims, witnesses and the general gallery. The seating area for prisoners is also located at the bottom of a stairway leading directly to the judges' offices which does not have adequate security.
 (4) Prisoners being transported into the court facilities are brought into the building either through a backdoor and then into the courtroom through a side door or through the front door and directly into the courtroom. Providing safe and adequate security during the transportation process is not possible.
 (5) Criminal jury trials pose a safety risk due to the fact that jurors are seated immediately adjacent to the defendants, witnesses and family members of the defendants.
 (6) Juvenile court proceedings face the same safety and security concerns described above with the added problem of keeping juvenile proceeding confidential due to the close proximity of all participants.
 (7) The current courtroom conditions are a tragedy waiting to happen. Delays associated with a formal bid only increase the likelihood that an incident will occur resulting in serious injuries. A new temporary facility can be quickly constructed and when completed will provide the safety and security required and needed. *Page 3 
Under the Public Bid Law, contracts for public works projects costing $100,000 or more must be advertised and let by contract to the lowest responsible and responsive bidder. Public works means the erection, construction, alteration, improvement, or repair of any public facility or immovable property owned, used, or leased by a public entity. LSA-R.S. 38:2212(1)(a) (d) and38:2211(11). The construction of temporary courthouse facilities meets the definition of a public work.
Presumably, the costs of construction will exceed the threshold amount of $100,000, thereby requiring compliance with the formal advertising and bidding process. If the Public Bid Law is applicable, then the only available exemption to avoid the bidding process is contained in the statutory emergency provisions. LSA-R.S.38:2212(D)(1) provides:
 "This Section shall not apply in cases of public emergency where such emergency has been certified to by the public entity and notice of such public emergency shall, within ten days thereof, be published in the official journal of the public entity proposing or declaring such public emergency."
 "Emergency" is defined in LSA-R.S. 38:1211(6) as:
 "An emergency means an unforeseen mischance bringing with it destruction or injury of life or property or the imminent threat of such destruction or injury or as the result of an order from any judicial body to take any immediate action which requires construction or repairs absent compliance with the formalities of this Part, where the mischance or court order will not admit of the delay incident to advertising as provided in this Part."
In prior opinions, this office has recognized that the Public Bid Law is prohibitory in nature, enacted in the interest of taxpaying citizens to insure public accountability and protection in the award of such contracts. Any exception in such an act in furtherance of public policy must be narrowly construed. Attorney General Opinion No. 90-583.
The emergency defined in the statute refers not only to "an unforeseen mischance", but also to one that brings with it "destruction or injury of life or property or the imminent threat of such destruction or injury." Webster's Third New International Dictionary defines "imminent" as "ready to take place, near at hand or impending."
The emergency provisions of the Public Bid Law may be used to address significant health and safety concerns. The administration of justice by the judges of the Twenty-Fifth Judicial District Court must be provided in an efficient and safe manner. The lack of adequate security places all parties and participants in the judicial process at a *Page 4 
significant and present risk of injury. Legal proceedings, including the administration of criminal cases, cannot be postponed or delayed indefinitely and the continuation of such proceedings in the present environment has created a safety risk to all those involved.
The present courthouse security situation presents an imminent threat of destruction to property or injury of life and it is, therefore, the opinion of this office that the immediate need to construct temporary courthouse facilities falls within the meaning of "emergency" as set forth in R.S. 38:2211(A)(6), and the construction may therefore be handled by compliance with the procedures set forth in R.S. 38:2212(D)(1) and (2). Also see Ag. Op. No. 94-173 (Emergency provisions of Public Bid Law may be invoked to replace main cooling unit to prevent health-related problems of those attending and/or working at scheduled event.) and Ag. Op. No. 01-289; (Emergency provisions of Public Bid Law may be invoked to repair hail storm damage that continues to cause health and safety concerns.)
We trust that this answers your inquiry.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: __________________________________ RICHARD L. McGIMSEY
Assistant Attorney General Public Finance Contracts Section
CCF, JR/RLM/jv